# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

CLARISSA I. L.,[1]

       Plaintiff,

      v.

FRANK J. BISIGNANO,[2]
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

Case No. 2:24-cv-05256-AJR

**MEMORANDUM DECISION AND ORDER**

## I.

## INTRODUCTION

Clarissa I. L. ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI").  The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Commissioner Frank J. Bisignano is substituted in as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

United States Magistrate Judge.  (Dkts. 6, 7, 8.)  For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further administrative proceedings consistent with this decision.

## II.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on April 26, 2021, alleging a disability beginning on June 30, 1998.  (Dkt. 10-6 at 2-8.)  Plaintiff's application was initially denied on November 9, 2021.  (Dkt. 10-5 at 7-11.)  Plaintiff submitted a request for reconsideration on January 13, 2022.  (Id. at 21.)  The application for SSI was denied upon reconsideration on April 27, 2022.  (Id. at 22-27.)

Thereafter, Plaintiff filed a request for a hearing by an Administrative Law Judge on June 3, 2022.  (Id. at 28.)  On June 16, 2022, Plaintiff filed an objection to appearing via video teleconferencing, but on September 23, 2022, Plaintiff's counsel agreed to a telephone hearing.  (Id. at 76, 93.)  An initial hearing notice was sent on March 3, 2023 for a telephonic hearing scheduled on June 6, 2023.  (Id. at 94-107.)  On March 9, 2023, Plaintiff submitted an acknowledgement of receipt regarding the hearing notice.  (Id. at 108.)  An amended hearing notice was sent on March 30, 2023 for a telephonic hearing scheduled for June 6, 2023.  (Id. at 109-118.)  On May 17, 2023, Plaintiff agreed to a telephone hearing.  (Id. at 123-124.)

On June 6, 2023, Administrative Law Judge Ghermann Magana (the "ALJ") conducted a hearing via telephone.[3]  (Dkt. 10-3 at 38-54.)  The ALJ published an unfavorable decision on August 15, 2023.  (Id. at 13-37.)  Plaintiff requested a review of the ALJ's decision by the Appeals Council on October 15, 2023.  (Id. at 5, 6.)  On October 16, 2023, the Appeals Council granted Plaintiff's request for

_____

[3] Plaintiff was represented by an attorney at the hearing.  (Dkt. 10-3 at 40.)  Plaintiff, her attorney, and the vocational expert ("VE") appeared by telephone.  (Id.)

additional time before it acted on Plaintiff's case.  (Id. at 8-12.)  On June 6, 2024, the Appeals Council denied Plaintiff's request for review.  (Id. at 2-7.)  Therefore, on June 6, 2024, the ALJ's decision became the final decision of the Commissioner. See 42 U.S.C. § 405(h).  Plaintiff now seeks review of the ALJ's final decision.

## III.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

1   Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-

2   54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

3        The claimant has the burden of proof at steps one through four and the

4   Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.

5   Additionally, the ALJ has an affirmative duty to assist the claimant in developing

6   the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant

7   meets their burden of establishing an inability to perform past work, the

8   Commissioner must show that the claimant can perform some other work that exists

9   in "significant numbers" in the national economy, taking into account the claimant's

10  residual functional capacity ("RFC"), age, education, and work experience.  Tackett,

11  180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1),

12  416.920(g)(1).  The Commissioner may do so by the testimony of a vocational

13  expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20

14  C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

15  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has

16  both exertional (strength-related) and non-exertional limitations, the Grids are

17  inapplicable and the ALJ must take the testimony of a VE.  See Moore v. Apfel, 216

18  F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th

19  Cir. 1988)).

20

21                                    **IV.**

22                          **THE ALJ'S DECISION**

23       The ALJ employed the five-step sequential evaluation process and concluded

24  that Plaintiff was not disabled within the meaning of the Social Security Act.  (Dkt.

25  10-3 at 16-37.)  At step one, the ALJ found that Plaintiff had not engaged in

26  substantial gainful activity since April 26, 2021, the application date.  (Id. at 19.)  At

27  step two, the ALJ found that Plaintiff had the following severe impairments:

28  "autism, depression[,] and anxiety."  (Id. at 19-20 (bold omitted).)  The ALJ found

                                      4

1  Plaintiff's obesity, Trisomy X, polycystic ovarian syndrome, polycystic ovaries, and

2  irregular menstrual cycle to be non-severe.  (Id. at 20.)  The ALJ chose not to

3  include Plaintiff's bilateral ankle pain, cholelithiasis, chronic cholecystitis,

4  prediabetes, mild intellectual disabilities, and extra chromosome three as medically

5  determinable impairments.  (Id. at 20-23.)  The ALJ found that Plaintiff's high

6  density lipoprotein deficiency failed to meet the durational requirement and was

7  non-severe.  (Id. at 21.)  At step three, the ALJ determined that Plaintiff did not have

8  an impairment or combination of impairments that met or medically equaled the

9  severity of any of the listings in the regulations.  (Id. at 23.)  In making this

10  determination, the ALJ found that the evidence failed to satisfy both the "paragraph

11  B" and "paragraph C" criteria.  (Id. at 23-25.)

12      The ALJ assessed Plaintiff's RFC and concluded that she could perform a full

13  range of work at all exertional levels with the following non-exertional limitations:

14  she is limited to the performance of simple, routine tasks that involve no more than

15  occasional changes in the work environment and she can have occasional interaction

16  with the public and with coworkers.  (Id. at 25.)  In making this determination, the

17  ALJ considered "prior administrative medical findings and medical source

18  opinions" and found that the RFC was consistent with the medical evidence.  (Id. at

19  25-28.)  Then, the ALJ found that Plaintiff's "medically determinable impairments

20  could reasonably be expected to cause some of the alleged symptoms; however,

21  [Plaintiff's] statements concerning the intensity, persistence and limiting effects of

22  these symptoms [were] not entirely consistent with the medical evidence and other

23  evidence in the record."  (Id. at 29.)  The ALJ considered Plaintiff's subjective

24  complaints, Plaintiff's symptoms, medical evidence, third-party testimony, and

25  mental status examination findings and found that Plaintiff's "allegations of

26  disabling symptoms are not entirely consistent with or supported by the medical and

27  other evidence of record" such that Plaintiff "does not have limitations beyond those

28  stated in the [RFC]."  (Id. at 29-30.)  The ALJ also considered the third-party

statements submitted on the Plaintiff's behalf and found that "the statements of the witness [were] unsupported." (Id. at 30-31.)  Ultimately, the ALJ found that Plaintiff's "own statements [were] inconsistent with and/or unsupported by the evidence of record." (Id. at 31.)

At step four, the ALJ found that Plaintiff had no past relevant work and thus the "transferability of job skills" was not at issue.  (Id. at 31.)  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs which exist in significant number in the national economy.  (Id.)  Specifically, the ALJ found that Plaintiff could perform the representative occupations of floor worker (Dictionary of Occupational Titles ("DOT") #381.687-034, 118,000 jobs in the national economy), hand packager (DOT #920.587-018, 78,000 jobs in the national economy), small parts assembler (DOT #706.684-022, 319,000 jobs in the national economy), housekeeper/cleaner (DOT #323.687-014, 221,000 jobs in the national economy), weight tester (DOT #539.485-010, 9,000 jobs in the national economy), and sorter (DOT #521.687-086, 2,200 jobs in the national economy).  (Id. at 31-32.)  Accordingly, the ALJ found that Plaintiff had not been under a disability as defined by the Social Security Act since April 26, 2021, the date the application was filed.  (Id. at 32.)

# V.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v.

1    <u>Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989)).

2    "Substantial evidence is more than a scintilla, but less than a preponderance."

3    <u>Reddick</u>, 157 F.3d at 720 (citing <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1066 (9th Cir.

4    1997)).  It is "relevant evidence which a reasonable person might accept as adequate

5    to support a conclusion."  <u>Id.</u> (citing <u>Jamerson</u>, 112 F.3d at 1066; <u>Smolen</u>, 80 F.3d at

6    1279).  To determine whether substantial evidence supports a finding, the court must

7    "consider the record as a whole, weighing both evidence that supports and evidence

8    that detracts from the [Commissioner's] conclusion."  <u>Aukland</u>, 257 F.3d at 1035

9    (citing <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can

10    reasonably support either affirming or reversing that conclusion, the court may not

11    substitute its judgment for that of the Commissioner.  <u>Reddick</u>, 157 F.3d at 720-21

12    (citing <u>Flaten v. Sec'y of Health and Hum. Servs.</u>, 44 F.3d 1453, 1457 (9th Cir.

13    1995)).

14

15    **VI.**

16    **DISCUSSION**

17    Plaintiff raises five issues for review: (1) whether the ALJ properly evaluated

18    record evidence concerning Plaintiff's impairments; (2) whether the ALJ properly

19    rejected Plaintiff's subjective symptom testimony; (3) whether the ALJ properly

20    formulated the RFC; (4) whether the ALJ properly rejected lay witness testimonial

21    evidence; and (5) whether the ALJ properly evaluated medical opinion evidence.

22    (Dkt. 11 at 5-14; Dkt. 14 at 1-10.)  For the reasons set for the below, the decision of

23    the Commissioner is REVERSED.

24    **A.    The ALJ Did Not Properly Evaluate Record Evidence Concerning**

25    **Plaintiff's Impairments.**

26    In her first ground for relief, Plaintiff contends that "[t]he ALJ misstate[d]

27    evidence, which [led] to an error in the evaluation of Plaintiff's disability, including

28    her severe impairments, consistency of her subjective complaints, and her residual

7

functional capacity and ability to perform other work." (Dkt. 11 at 5.)  First, Plaintiff argues that the ALJ committed harmful error by stating that Plaintiff received "secondary educational support [for] up to 10 days a month."  (Id. at 6.) Plaintiff alleges that the records actually show that she received support up to 10 times a day and/or "6 hours per day" since 2016 in a "1:3 staffing ratio."  (Id.) Second, Plaintiff contends that the ALJ erred in not providing substantial evidence to support the finding that Plaintiff "ha[d] been [able] to seek and attend medical treatment for her various conditions independently."  (Id. at 7-8.)  Finally, Plaintiff contends that the ALJ committed harmful error by finding that the "paragraph C criteria [was] not satisfied" with regard to Plaintiff's "supportive services."  (Id. at 8, 9.)  Specifically, Plaintiff argues that the ALJ inaccurately found that "Plaintiff ha[d] the ability to engage in a wide range of activities independently including activities of self-care[,] [sic] [there was] no evidence that [Plaintiff] require[d] a highly structured environment or inpatient living facilities, and [Plaintiff] continue[d] to live at home in the 'least restrictive environment.'"  (Id.)

### 1.   **Analysis.**

Regarding Plaintiff's first contention, the ALJ stated during the step two analysis that "[r]ecords from Tierra Del Sol Foundation indicate that the claimant receives services consisting of secondary educational support up to ten days a month."  (Dkt. 10-3 at 20 (citing Dkt. 10-8 at 372; Dkt. 10-9 at 150).)  However, as Plaintiff correctly indicated, the records actually show that Plaintiff received daily support for up to 10 times per day.  (Dkt. 10-9 at 150.)  Therefore, the Court finds that the ALJ misstated the record regarding the amount of support services Plaintiff received.

Nevertheless, regarding the ALJ's analysis at step two, this error appears to have been harmless because, directly after stating this error, the ALJ nevertheless found that Plaintiff's mental impairments of autism, depression, and anxiety were severe.  (Dkt. 10-3 at 19-20.)  Therefore, it appears that this error would not have

1  made any substantial difference at step two because the ALJ would have come to the

2  same conclusion.  See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)

3  ("[T]he court will not reverse an ALJ's decision for harmless error, which exists

4  when it is clear from the record that the ALJ's error was inconsequential to the

5  ultimate nondisability determination.").

6       Regarding the ALJ's misstatement of the record, Plaintiff further contends

7  that the ALJ erred at step three in not finding disability under paragraph C "[l]isted

8  [i]mpairments 12.04 (C) and/or 12.06 (C)[.]"  (Dkt. 11 at 9.)  At step three, the ALJ

9  found that "the evidence fail[ed] to establish the presence of the 'paragraph C'

10  criteria because there [was] no evidence that the claimant ha[d] achieved only

11  marginal adjustment."  (Dkt. 10-3 at 25.)  In making this finding, the ALJ found that

12  Plaintiff was "able to engage in a wide range of activities independently including

13  activities of self-care."  (Id.)  The ALJ explained that Plaintiff "attends college

14  courses with a school coach/aid, is able to perform household chores but at times,

15  requires reminders[,]" and Plaintiff "continue[s] [to] liv[e] at home in the 'least

16  restrictive environment' where she receive[s] help from her family in furthering her

17  independence."  (Id.)

18       However, the objective medical evidence in the record demonstrates that

19  Plaintiff consistently requires supportive services from her family and from outside

20  organizations to perform daily activities.  (See Dkt. 10-8 at 5 (Plaintiff "has never

21  had an independent job."); Dkt. 10-9 at 23 ("[Plaintiff] will call the DMH referred

22  agency today with the help of case man[a]ger, Cristina Bonilla."); Dkt. 10-9 at 174

23  ("[Plaintiff] normally waits until her mother tells her to clean up in the house . . . .

24  [Plaintiff] normally has her [d]ad order her food when her mom isn't home instead

25  of making her own food. Quality Care ILS assists [Plaintiff] with learning new

26  recipes and making her own meals."); Dkt. 10-9 at 174-177 (Quality Care ILS

27  provides Plaintiff with assistance and supportive services for developing household

28  management skills, community awareness skills, and social skills for up to 20 hours

per month.); Dkt. 10-9 at 207 (Plaintiff's "[p]arents will ensure that all medical and dental appointments are scheduled" and Plaintiff's "[m]other will provide transportation to appointments."); Dkt. 10-9 at 216 ("[Plaintiff's] family will help and support her maintain and enhance her independent living skills.").)  Therefore, in tandem with the ALJ's error in misstating the amount of supportive services that Plaintiff receives, the ALJ's determination at step three is called into question because the record demonstrates that Plaintiff is unable to perform work activities independently.

Moreover, this error at step three does not appear to be harmless because a finding of "marginal adjustment," which relies on properly evaluating a Plaintiff's psychosocial support, is the determinative finding regarding whether Plaintiff satisfies "[l]isted [i]mpairments 12.04 (C) and/or 12.06 (C)" as Plaintiff has had medically documented depression and anxiety for over two years with ongoing psychosocial supports and mental health therapy.  (Dkt. 11 at 9); 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.00(D), 12.00(G)(2)(C), 12.04(C), 12.06(C) ("Therefore, when [the agency] evaluate[s] the effects of your mental disorder and rate[s] the limitation of your areas of mental functioning, [the agency] will consider the kind and extent of supports you receive, the characteristics of any structured setting in which you spend your time, and the effects of any treatment.").

Thus, the Court concludes that remand is warranted to allow the ALJ to properly evaluate the record and clarify the findings related to step three in light of the corrected account of the record set forth above.

**B.** **The ALJ Did Not Properly Reject Plaintiff's Subjective Symptom Testimony.**

In her second ground for relief, Plaintiff contends that the ALJ improperly disregarded her subjective symptom testimony because the ALJ either did not consider or misstated consequential evidence which would have altered the RFC and changed the VE's recommendation.  (Dkt. 11 at 10-11; Dkt. 14 at 8.)  Specifically,

Plaintiff contends that the ALJ erred in concluding that, "despite 'occasionally' requiring verbal prompts, Plaintiff was able to complete all of her activities of daily living independently" because "[t]he record as a whole does not support such [a] degree of independence." (Dkt. 11 at 10-11; Dkt. 14 at 5.) In supporting this contention, Plaintiff highlights her need for "significant services and support" for daily living activities including doing and remembering chores, using public transportation, scheduling, attending medical appointments, maintaining community safety awareness, and communicating with others. (Dkt. 11 at 10-11; Dkt. 14 at 5-6.) Additionally, Plaintiff contends that the ALJ failed to show how the ability to go on one trip and "volunteer at a cat shelter for 2 days, 2 hours each day" was "inconsistent with the ability to independently, appropriately, and effectively sustain the ability to work." (Dkt. 14 at 7.) Finally, Plaintiff argues that the ALJ's finding that "Plaintiff's claims were inconsistent because of the largely unremarkable mental status examinations" was erroneous because the impairment of autism is not always seen on mental status exams and the reports actually supported Plaintiff's impairments. (Id. at 7-8.) Therefore, Plaintiff requests that this Court "consider the evidence that the ALJ did not consider, and to consider that the misstatement of the evidence substantially changes how the evidence of support is significantly greater than the ALJ believed in [when] making his determination [because] Defendant and the ALJ must address all of the evidence." (Id. at 8.)

### 1.    Plaintiff's Subjective Symptom Testimony.

Regarding Plaintiff's daily activities, Plaintiff testified at the time of the hearing that she was a "fourth-year senior" in community college working towards an associate's degree in graphic design. (Dkt. 10-3 at 44.) Plaintiff also testified that she lives at home with two dogs that she feeds and interacts with, but requires reminders from her mother to do so. (Id. at 43, 46-47.) In relation to other chores that Plaintiff does, Plaintiff testified that she requires "reminders" telling her how to do the chores and that, without the reminders, she would "try to do [the chores], but

11

probably with a long delay." (Id. at 47.)  In response to the ALJ's questions, Plaintiff stated that in her free time she sometimes goes on walks, but that when she does, she mostly goes with her "instructor person from college[.]" (Id. at 48.) Plaintiff also stated that she sometimes watches movies alone or with family, but that when she draws, she does so alone. (Id.)

Regarding Plaintiff's supportive services, Plaintiff testified at the time of the hearing that she has a coach assistant in school who goes with her to all of her classes daily and helps her with her assignments, her homework, and her studies. (Id. at 44-45.)  Plaintiff further testified that she also receives help from "Tierra del Sol" who helps Plaintiff with "work etiquette, social skills[,] and work experience" "Mondays through Thursdays" for six to eight hours per day. (Id. at 45.)  Plaintiff stated she believes that Tierra del Sol is helping her gain skills for "after her college degree." (Id. at 49-50.)  Plaintiff stated that she also receives assistance from "ILS" who helps Plaintiff "learn how to cook, manage money, [sic] do chores, [and] help to take Access" two hours per day. (Id. at 45-46.)  Additionally, Plaintiff testified that she receives "in-home respite" services. (Id. at 46.)  Plaintiff stated that without her supportive services, she would have "trouble focusing in class" and her "grades [would] probably slip[.]" (Id.)

## 2.    **Legal Standard.**

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017).  First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. See Garrison, 759 F.3d at 1014.  "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted).  "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or

12

the severity thereof." Id. (internal quotation marks omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. See Trevizo, 871 F.3d at 678; see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal quotation marks omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. See Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th

13

1    Cir. 2009) (internal quotation marks omitted).

2          Further, the ALJ must make a credibility determination with findings that are

3    "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

4    discredit claimant's testimony." Tommasetti, 533 F.3d at 1039 (internal quotation

5    marks omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A

6    finding that a claimant's testimony is not credible must be sufficiently specific to

7    allow a reviewing court to conclude the adjudicator rejected the claimant's

8    testimony on permissible grounds and did not arbitrarily discredit a claimant's

9    testimony regarding pain." (internal quotation marks omitted)).  The ALJ must

10   identify "what testimony is not credible and what evidence undermines the

11   claimant's complaints." Brown-Hunter, 806 F.3d at 493.  Although an ALJ's

12   interpretation of a claimant's testimony may not be the only reasonable one, if it is

13   supported by substantial evidence, "it is not [the court's] role to second-guess it."

14   Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

15          **3.    Analysis.**

16          The ALJ engaged in the two-step analysis required by Trevizo and found at

17   the first step that Plaintiff's "medically determinable impairments could reasonably

18   be expected to cause some of the alleged symptoms." (Dkt. 10-3 at 29.)  However,

19   the ALJ concluded at the second step that Plaintiff's "statements concerning the

20   intensity, persistence and limiting effects of these symptoms [were] not entirely

21   consistent with the medical evidence and other evidence in the record." (Id.)

22   Additionally, the ALJ did not make a finding of malingering.  (Id.)

23                    i.    Support Services for Daily Activities.

24          The ALJ found that Plaintiff's subjective testimony regarding her need for

25   supportive services was inconsistent with the record based on an April 2022

26   consultative evaluation where Plaintiff "reported that she [wa]s able to care for

27   herself independently and [attend] college while receiving accommodations." (Id.

28   (citing Dkt. 10-8 at 403).)  However, this statement is contradictory because,

14

receiving accommodations such as the supportive services that Plaintiff receives, indicates that a person is not functioning independently.  The ALJ also stated that "the records include notations that [Plaintiff] [could] complete all of her activities of daily living independently but she occasionally require[d] verbal prompts." (Id. (citing Dkt. 10-9 at 210-11).)  However, the requirement for occasional verbal prompts similarly contradicts the ability to complete activities of daily living independently.  Additionally, there is substantial evidence in the record demonstrating that Plaintiff cannot adequately care for herself independently as she has three different supportive services looking after her every day in addition to her family.  (See Dkt. 10-9 at 150 (Plaintiff receives daily support with a maximum of 10 times a day from Tierra del Sol.); Dkt. 10-9 at 174-177, 219 (Quality Care ILS provides Plaintiff with assistance and supportive services for developing household management skills, community awareness skills, and social skills for up to 20 hours per month.); Dkt. 10-9 at 210 ("[Plaintiff] currently receives 20hrs/mo of ILS services through Quality Care ILS and has 30hrs/mo of in-home respite through Accredited Respite."); Dkt. 10-9 at 212 ("[Plaintiff] receives support of 6hrs/d through Tierra Del Sol/ Nexus program.").)  Despite misstating the amount of services received from Tierra del sol, the ALJ acknowledged that Plaintiff "gets twenty hours a month of ILS services and thirty hours a month of in-home respite." (Dkt. 10-3 at 29.)

With regard to Plaintiff's daily activities, the ALJ pointed to "[t]he most recent treatment records from the regional center" which stated that Plaintiff "enjoys baking and caring for house pets[.]"  (Id. (citing Dkt. 10-9 at 210).)  However, despite enjoying these activities, there is ample evidence that Plaintiff does not perform these activities alone and requires help and reminders to complete them. (See Dkt. 10-3 at 46-47 (Plaintiff stated at the hearing that she requires reminders from her mother to feed the dogs.); Dkt. 10-7 at 22, 43 (Emely Ledesma stated that "[Plaintiff] gives food and water to [her pets]" but that "parents help with these

15

1   duties."); Dkt. 10-7 at 55 (Plaintiff stated that she gives her pets food and water but

2   that her parents help her do so.); Dkt. 10-9 at 174 ("Quality Care ILS assists

3   [Plaintiff] with showing initiative and setting a certain amount of time each day to

4   work on her chores around the house.").)

5          The ALJ further indicated that "[Plaintiff] [wa]s able to decipher bills through

6   name and value and [wa]s capable of making purchases." (Dkt. 10-3 at 29 (citing

7   Dkt. 10-9 at 210-11).) However, there is ample evidence in the record that Plaintiff

8   cannot handle her own money. (See Dkt. 10-7 at 24 ("[Plaintiff] does not

9   understand how to pay bills or use checkbooks or money orders."); Dkt. 10-7 at 45,

10  57; Dkt. 10-8 at 9 ("[Plaintiff] has very limited experience managing money."); Dkt.

11  10-8 at 96, 392 ("[Plaintiff] doesn't know the value of money."); Dkt. 10-8 at 157,

12  243 ("[Plaintiff] stated she notices that she is spending money and it can be

13  impulsive and compulsive."); Dkt. 10-9 at 180, 190, 200 ("[Plaintiff] doesn't know

14  the value of money."); Dkt. 10-9 at 210 ("Family is providing for Clarissa and

15  assist[s] her with money management skills.").)

16         Finally, the ALJ stated that "[i]t was also noted that [Plaintiff] [could] use

17  Uber for transportation[.]" (Dkt. 10-3 at 29 (citing Dkt. 10-9 at 212).) However,

18  there is substantial evidence in the record demonstrating that Plaintiff needs

19  assistance to use transportation and would need assistance to use a ride-sharing

20  service like Uber. (See Dkt. 10-3 at 44-45 (Plaintiff stated that she has a "coach"

21  who goes with her around school every day from class to class.); Dkt. 10-7 at 24, 45

22  (Emely Ledesma stating that "[Plaintiff] rarely goes outside" and "[Plaintiff] does

23  not go [out] alone because of her anxiety."); Dkt. 10-7 at 57 (Plaintiff stated that she

24  does not go outside often because she "get[s] stressed out" and cannot go out alone

25  because of "anxiety" and "panic attacks."); Dkt. 10-8 at 103 ("[Plaintiff's] [m]other

26  will provide transportation to appointments."); Dkt. 10-9 at 180 ("[Plaintiff] does

27  not know how to use public transportation unless she is taught the route."); Dkt. 10-

28  9 at 184 ("Family will continue to assist [Plaintiff] in making dental/medical

16

1    appointments for her, as well as provide transportation.").)

2        Therefore, in light of above and considering the inaccurate reflection of the

3    record as stated above, after reviewing the record in its entirety, the Court concludes

4    that the ALJ's statements regarding Plaintiff's need for supportive services and daily

5    activities were not supported by substantial evidence in the record.  See Bergfeld v.

6    Barnhart, 361 F. Supp. 2d 1102, 1112, 1115 (D. Ariz. 2005) ("The Social Security

7    Act does not require that claimants be utterly incapacitated . . . because the ability to

8    do limited household chores, interspersed with rest, does not demonstrate the ability

9    to work eight hours a day, five days a week, where it might be impossible to

10   periodically rest" such that "the ALJ must link the claimant's daily activities to the

11   ability to perform full-time work when assessing residual functional capacity.").

12   Thus, remand is necessary for the ALJ to either provide additional appropriate

13   reasons for rejecting Plaintiff's subjective symptom testimony or to incorporate

14   additional limitations into Plaintiff's RFC.

15              ii.    Mental Health Symptoms.

16       With regard to Plaintiff's allegations of mental health symptoms, the ALJ

17   rejected Plaintiff's testimony by relying on a selection of medical records showing

18   that Plaintiff "ha[d] anxiety off and on[,]" "was not depressed[,]" "ha[d] friends and

19   c[ould] text and chat with them when she feels down[,]" "ha[d] five friends[,]" had

20   an "unremarkable" mental status examination, and "[did] not display any

21   maladaptive behavior[.]"  (Dkt. 10-3 at 29 (citing Dkt. 10-9 at 49-50, 63, 211).)

22   However, there is substantial evidence in the record demonstrating that Plaintiff's

23   anxiety, depression, and maladaptive behavior waxed and waned.  (See Dkt. 10-8 at

24   7 (Plaintiff stated that "if she is extremely frustrated when she cannot solve some

25   problem" she will have a meltdown.); Dkt. 10-8 at 34 (Plaintiff's mental status exam

26   indicated that Plaintiff had mildly impaired impulse control and judgement with an

27   "euthymic, anxious, [and] irritable" mood.); Dkt. 10-8 at 26 ("[Plaintiff] reported for

28   the past three months she has been feeling stressed, depressed and anxious regarding

1   her life, school and family. [Plaintiff] admitted to having thoughts and intent, means

2   to harm self via cutting or taking pills."); Dkt. 10-8 at 382 (In September 2021,

3   Plaintiff "stated that she was also experiencing symptoms of depression" and

4   "described living under a dark cloud" with "feelings of dread and decreased self-

5   esteem."); Dkt. 10-8 at 383 (Plaintiff's mental status exam indicated that Plaintiff

6   had "diminished social skills[,]" Plaintiff's "[m]ood was decreased and affect was

7   anxious[,]" and Plaintiff's "insight and judgment were below average."); Dkt. 10-8

8   at 402 (In April 2022, Plaintiff "stated that she has feelings of sadness and

9   depression."); Dkt. 10-8 at 403 (Plaintiff's mental status exam indicated that

10  Plaintiff "had diminished social skills[,] appeared somewhat uncomfortable

11  interacting with this evaluator[,]" and Plaintiff's "[m]ood was slightly decreased and

12  affect was slightly anxious."); Dkt. 10-9 at 8 (In July 2022, a nurse noted that

13  Plaintiff "[h]as depression symptoms" and "has [occasional] suicidal thoughts.").)

14          Additionally, the ALJ acknowledged that Plaintiff had "suicidal ideations"

15  and took "a break from college due to the severity of her mental health symptoms."

16  (Dkt. 10-3 at 29 (citing Dkt. 10-9 at 39).)  The ALJ further noted that Plaintiff

17  "demonstrated diminished social skills[,] appeared somewhat uncomfortable with

18  the examiner[,]" "demonstrated slightly decreased mood[,] slightly anxious affect[,]

19  and her insight and judgment were below age expectations."  (Id. (citing Dkt. 10-8

20  at 403-04).)  The ALJ also noted that in July 2022, Plaintiff was "anxious, drawing

21  on her notepad and made occasional eye contact."  (Id. (citing Dkt. 10-9 at 10).)

22  Finally, the ALJ noted that Plaintiff's mother stated, "that when [Plaintiff] is

23  overwhelmed, she will communicate her feelings, but not right away."  (Id. (citing

24  Dkt. 10-9 at 211).)  Therefore, the ALJ's reliance on isolated instances of

25  improvement in symptoms to reject Plaintiff's subjective mental health testimony

26  was not supported by substantial evidence.  See Garrison, 759 F.3d at 1017 ("Cycles

27  of improvement and debilitating symptoms are a common occurrence, and in such

28  circumstances it is error for an ALJ to pick out a few isolated instances of

1    improvement over a period of months or years and to treat them as a basis for

2    concluding a claimant is capable of working."); see also Holohan v. Massanari, 246

3    F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be

4    read in context of the overall diagnostic picture he draws. That a person who suffers

5    from severe panic attacks, anxiety, and depression makes some improvement does

6    not mean that the person's impairments no longer seriously affect her ability to

7    function in a workplace."). Thus, remand is necessary for the ALJ to either provide

8    additional appropriate reasons for rejecting Plaintiff's subjective symptom testimony

9    or to incorporate additional limitations into Plaintiff's RFC.

10                        iii.    The ALJ's Rejection of Third-Party Statements.

11            In challenging the ALJ's credibility analysis, Plaintiff also argues that the

12   ALJ erred by failing to provide legally sufficient reasons for rejecting two third-

13   party function reports from Plaintiff's ILS instructor, Emely Ledesma. (Dkt. 11 at

14   11-12; Dkt. 10-7 at 21-28, 42-49.) The record shows that Ms. Ledesma filled out

15   her initial third-party function report on March 9, 2021, and completed the second

16   third-party function report on May 19, 2021. (Dkt. 10-7 at 21-28, 42-49.)

17            Plaintiff's and Ms. Ledesma's function reports share a similar structure and

18   include detailed questions in narrative and checkbox formats about Plaintiff's daily

19   activities, functional limitations, physical and mental abilities, and the effect of

20   Plaintiff's symptoms on her everyday life. (Id.) Ms. Ledesma's responses largely

21   mirrored Plaintiff's statements in her own function report, including that Plaintiff

22   needed reminders, experienced anxiety and stress if she went out alone, had

23   limitations in the ability to follow both written and spoken instructions, and did not

24   respond well to change. (Dkt. 10-7 at 23-27, 44-48.)

25            The ALJ considered both third-party function reports and provided a detailed

26   summary of Ms. Ledesma's statements. (Dkt. 10-3 at 30 (citing Dkt. 10-7 at 23-26,

27   44-45, 47, 49).) The ALJ concluded that these lay witness statements did not affect

28   the ALJ's findings. (Id.) In rejecting Ms. Ledesma's reports, the ALJ found that

                                            19

1    Ms. Ledesma had "insufficient contact" with Plaintiff "to provide a probative

2    account," citing Ms. Ledesma's statement that she spent about twenty hours per

3    month assisting Plaintiff with independent living skills.  (Id. (citing Dkt. 10-7 at

4    42).)  As an additional rationale for rejecting the lay witness statements, the ALJ

5    explained that the same reasons given for discounting Plaintiff's symptom testimony

6    also applied to Ms. Ledesma's lay witness statements.  (Id.)

7        The Ninth Circuit has previously held that "[l]ay testimony as to a claimant's

8    symptoms is competent evidence that an ALJ must take into account, unless he or

9    she expressly determines to disregard such testimony and gives reasons germane to

10   each witness for doing so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

11   However, in March 2017, new rules took effect governing how ALJs are to consider

12   and articulate their consideration of medical opinions.  See Revisions to Rules

13   Regarding the Evaluation of Medical Evidence, 82 FR 5844-01; 20 C.F.R. §

14   404.1520c.  Under the revised framework, the ALJ is "not required to articulate how

15   [he or she] considered evidence from nonmedical sources" according to the

16   "articulation requirements" that apply to medical opinions.  20 C.F.R. §

17   404.1520c(d); see also 20 C.F.R. § 416.920c (describing factors the ALJ must

18   consider when determining the persuasiveness of medical opinions).

19       On March 7, 2025, the Ninth Circuit issued an opinion overruling the line of

20   cases requiring "germane reasons" for rejecting lay witness statements, holding that

21   for Social Security claims filed after the March 2017 regulatory change, ALJs were

22   not required to explain their reasons for discounting evidence from nonmedical

23   sources.  See Hudnall v. Dudek, 130 F.4th 668, 669, 671 (9th Cir. 2025).  That

24   opinion, however, was subsequently vacated and withdrawn.  See Hudnall v. Dudek,

25   133 F.4th 968 (9th Cir. 2025).  On May 13, 2025, the Ninth Circuit issued a new

26   opinion explicitly declining to address the issue of whether the germane reasons

27   standard has been overruled by the revised regulations.  Hudnall v. Dudek, No. 23-

28   3727, 2025 WL 1379101, at *2 (9th Cir. May 13, 2025) ("In light of those revised

1    regulations, the Government argues, our court's precedent requiring that an ALJ

2    give a 'germane reason[ ]' for rejecting lay testimony should be overruled. . . .  We

3    need not decide whether those regulations constitute 'intervening higher authority'

4    that is 'clearly irreconcilable' with our precedent.").

5            Because the Court has already determined that remand is necessary for the

6    ALJ to properly consider Plaintiff's subjective symptom testimony, the Court need

7    not resolve whether the ALJ was required to provide germane reasons for rejecting

8    lay witness statements.  Instead, the Court provides the following analysis as

9    guidance for the ALJ to consider on remand.  The Court first considers the ALJ's

10   finding that Ms. Ledesma spent insufficient time with Plaintiff to provide a reliable

11   account.  (Dkt. 10-3 at 30.)  The Court notes that the opinion of a lay witness who

12   sees the claimant on a less-than-daily basis still carries "some weight."  Dodrill v.

13   Shalala, 12 F.3d 915, 919 (9th Cir. 1993); see, e.g., Jones v. Astrue, 2013 WL

14   140229, at *8-9 (C.D. Cal. Jan. 10, 2013) (finding ALJ erred rejecting third-party

15   questionnaire from claimant's friend who "was in a sufficient position to observe

16   [claimant's] symptoms" where friend "tr[ied] to come and visit [claimant] every

17   other day and [called] her every day to see how she [was] feeling"); Richards v.

18   Colvin, 223 F. Supp. 3d 296, 305 (M.D. Pa. 2016) (confirming that observations of

19   lay witness, who taught [claimant] independent living skills for 8-10 hours each

20   week, "were entitled to consideration in assessing the severity of [claimant's]

21   limitations").

22          Indeed, when Ms. Ledesma completed her initial third-party function report

23   on March 9, 2021, she had spent over three months with Plaintiff, or more than sixty

24   hours.  (Dkt. 10-7 at 21.)  By the time that Ms. Ledesma filled out the May 19, 2021,

25   third-party function report, she had assisted Plaintiff for nearly 120 hours over a six-

26   month period.  (Dkt. 10-7 at 42.)  Considering this time frame, the Court finds that

27   Ms. Ledesma was in a sufficient position to observe Plaintiff's mental symptoms

28   and functional abilities.  Accordingly, in rejecting the third-party function reports,

1   the ALJ erroneously concluded that Ms. Ledesma observed Plaintiff too

2   infrequently.  (Dkt. 10-3 at 30.)

3   　　　Finally, the ALJ further erred by basing the rejection of Ms. Ledesma's

4   statements on the same faulty reasons that the ALJ relied upon to discount

5   Plaintiff's subjective symptom testimony.  (Id. at 31); see Smith v. Saul, 820 F.

6   App'x 582, 586 (9th Cir. 2020) ("Finally, the ALJ rejected the lay witnesses'

7   testimony for primarily the same reasons that he rejected Smith's symptom

8   testimony.  Because the ALJ should have accepted Smith's testimony, we hold that

9   the ALJ failed to provide germane reasons for rejecting the witnesses' testimony.").

10  For these reasons, the Court directs the ALJ to reconsider Ms. Ledesma's third-party

11  function reports.

12  **C.**　　**The ALJ Did Not Properly Evaluate Medical Opinion Evidence.**

13  　　　In her third ground for relief, Plaintiff contends that the ALJ erred by

14  rejecting as unpersuasive the opinions of consultative psychological examiners Dr.

15  Ruddock and Dr. Moran.  (Dkt. 11 at 12–13.)  Plaintiff asserts that the ALJ provided

16  legally insufficient reasons for disregarding Dr. Ruddock's opinion that Plaintiff had

17  a moderate limitation in the ability to respond to changes in a normal workplace

18  setting.  (Id. at 13.)  Plaintiff also challenges the ALJ's rejection of Dr. Moran's

19  opinion that Plaintiff would need assistance initially and would likely require a

20  supportive employment setting.  (Id. at 12.)

21  　　　**1.**　　**Legal Standard.**

22  　　　"When determining whether a claimant is eligible for benefits, an ALJ need

23  not take every medical opinion at face value."  Cross v. O'Malley, 89 F.4th 1211,

24  1213 (9th Cir. 2024) (internal quotation marks omitted).  Instead, "the ALJ must

25  scrutinize the various—often conflicting—medical opinions to determine how much

26  weight to afford each opinion."  Id.  For applications filed on or after March 27,

27  2017, the ALJ will not "defer or give any specific evidentiary weight to any medical

28  opinions," but instead "must explain how persuasive they find the medical opinion

22

1  by expressly considering the two most important factors for evaluating such

2  opinions: **supportability** and **consistency**." Id. (internal quotation marks omitted,

3  emphasis added).

4      An ALJ cannot reject a medical source's opinion without providing an

5  explanation supported by substantial evidence. See Woods v. Kijakazi, 32 F.4th

6  785, 792 (9th Cir. 2022). Supportability means the extent to which a medical source

7  supports the medical opinion by explaining the "relevant . . . objective medical

8  evidence." Id. at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means

9  the extent to which a medical opinion is "consistent . . . with the evidence from

10  other medical sources and nonmedical sources in the claim." Id. at 792 (citing 20

11  C.F.R. § 404.1520c(c)(2)). The ALJ's articulation of persuasiveness must show the

12  grounds actually relied upon for the final decision. See Lambert v. Saul, 980 F.3d

13  1266, 1277 (9th Cir. 2020).

14      **2.**    **Dr. Ruddock's Opinion.**

15      Dr. Ruddock, a clinical psychologist, conducted consultative mental

16  evaluations of Plaintiff in November 2019, September 2021, and April 2022. (Dkt.

17  10-8 at 20-23, 382-85, 402-05.)

18      a.    The November 2019 evaluation.

19      In November 2019, Dr. Ruddock observed that Petitioner had diminished

20  social skills, "clipped and halting" speech, and a labile mood. (Id. at 21-22.) Dr.

21  Ruddock listed the following probable diagnoses: autism spectrum disorder, level

22  I/II, with accompanying language impairment; and unspecified depressive disorder.

23  (Id. at 22.) Concerning Plaintiff's functional abilities, Dr. Ruddock opined as

24  follows:

25      Based on today's assessment, [Plaintiff] would be able to

26  understand, remember and carry out short, simplistic instructions with no difficulty. She would have mild difficulty to understand, remember

27  and carry out detailed and complex instructions. She would have mild

28  difficulty to make simplistic work-related decisions without special

1
2
3
4

      supervision.  She would have mild difficulty to comply with job rules such as safety and attendance.  She would have moderate difficulty to respond to change in a normal workplace setting.  She would have moderate difficulty to maintain persistence and pace in a normal workplace setting.

5
6
7

      [Plaintiff] presented with a history of interpersonal difficulties and was socially awkward with this examiner.  She presented with moderate difficulty to interact appropriately with supervisors, coworkers and peers on a consistent basis.

8    (Id.)

9            b.    The September 2021 evaluation.

10       At Plaintiff's September 2021 evaluation, Dr. Ruddock noted that Plaintiff

11   had a decreased mood, anxious affect, diminished social skills, and below average

12   insight and judgment.  (Id. at 383-84.)  Results from the Wechsler Adult Intelligence

13   Scale showed that Plaintiff had a full-scale IQ score of 90.  (Id. at 384.)  Dr.

14   Ruddock opined that Plaintiff's overall cognitive ability fell within the "average

15   intellectual functioning range," and listed probable diagnoses of autism spectrum

16   disorder without speech or intellectual impairments, and persistent depressive

17   disorder with anxious distress.  (Id. at 385.)

18       Evaluating Plaintiff's level of functioning in the workplace, Dr. Ruddock

19   repeated several of the same limitations from the November 2019 evaluation, in

20   particular that Plaintiff would have no difficulty carrying out short and simplistic

21   instructions, mild difficulty making simplistic work-related decisions without

22   special supervision, mild difficulty complying with job rules such as safety and

23   attendance, and moderate difficulty responding to change in a normal workplace

24   setting.  (Id. at 22, 385.)  Dr. Ruddock also opined that Plaintiff would have

25   moderate difficulty handling detailed and complex instructions, mild difficulty

26   maintaining persistence and pace in a normal workplace setting, and mild difficulty

27
28

1  interacting on a consistent basis with supervisors, coworkers, and peers.  (Id. at 385)

2              c.    The April 2022 evaluation.

3      In April 2022, Dr. Ruddock observed that Plaintiff had a slightly decreased

4  mood and a slightly anxious affect, and that her insight and judgment were "below

5  age expectations."  (Id. at 403-04.)  Dr. Ruddock opined the same diagnostic

6  impressions and work-related restrictions that were assessed in the September 2021

7  evaluation.  (Id. at 385, 404.)

8              d.    The ALJ's Determination.

9      The ALJ discounted Dr. Ruddocks' November 2019, September 2021, and

10  April 2022 opinions as unpersuasive. (Dkt. 10-3 at 27.)  In particular, the ALJ rejected

11  Dr. Ruddock's assessment that Plaintiff was moderately limited in responding to

12  changes in the workplace, finding that this restriction was "not supported and [was]

13  inconsistent with" Plaintiff's "mostly normal" mental status examinations during the

14  time period following her 2021 SSI claims, or with the "notations in the record" that

15  reflected Plaintiff was "essentially independent in her activities of daily living and

16  self-care."  (Id.)

17              e.    Analysis.

18      Dr. Ruddock's mental status examinations in September 2021 and April 2022

19  documented clinically significant findings, including below-average insight and

20  judgment, decreased mood, anxious affect, and diminished social skills.  (Dkt. 10-8

21  at 383–84, 403–04.)  In rejecting Dr. Ruddock's opinion as unsupported, the ALJ

22  did not address these findings.  (Dkt. 10-3 at 27.)  Additionally, at step three of the

23  sequential evaluation process, the ALJ specifically cited Dr. Ruddock's findings of

24  below-average insight and judgment when assigning a moderate limitation in

25  Plaintiff's ability to adapt or manage herself pursuant to the paragraph B criteria.

26  (Id. at 24.)  Yet the ALJ later rejected Dr. Ruddock's opinion that Plaintiff was

27  moderately limited in the ability to respond appropriately to changes in a routine

28  work setting, without acknowledging the apparent inconsistency between that

25

1   rejection and the ALJ's earlier reliance on the same findings.  (Id. at 27.)

2   Additionally, the ALJ did not explain how Plaintiff's ability to complete self-care

3   tasks or perform unspecified household chores—activities conducted in a familiar,

4   low-stress environment—undermined Dr. Ruddock's opinion concerning Plaintiff's

5   workplace adaptation abilities.  (Id. at 27; Dkt. 10-8 at 383, 403.).

6         With respect to the consistency factor, the Court notes that the ALJ cited a

7   mental status examination from Plaintiff's March 18, 2022, telehealth appointment

8   with her therapist, Ms. Kamarzarian.  (Dkt. 10-3 at 29; Dkt. 10-9 at 39, 50.)

9   Although the ALJ characterized the findings from this evaluation as "mostly

10  normal," the assessment included ratings of "unimpaired and unable to assess" in

11  the categories of impulse control and judgment.  (Dkt. 10-9 at 50.)  This suggests

12  that the evaluation may have been inconclusive or incomplete in categories that have

13  bearing on adaptation capabilities.  Additionally, the ALJ did not address or

14  reconcile the accompanying functional impairment assessment, in which Ms.

15  Kamarzarian indicated that Plaintiff was "severely impaired" in her ability to

16  maintain self-care and engage in usual social activities, "moderately impaired" in

17  performing work or school tasks, and "mildly impaired" in carrying out routine

18  daily activities.  (Id.)

19        The ALJ also did not acknowledge that Dr. Ruddock's assessment of a

20  moderate limitation in adaptation was consistent with the opinions of the non-

21  examining state agency psychological consultants.  Those consultants, after

22  reviewing Plaintiff's medical records, similarly concluded that Plaintiff had a

23  moderate limitation in her ability to respond appropriately to changes in the work

24  setting and would require a predictable environment with infrequent changes.  (Dkt.

25  10-4 at 30–31, 51–52, 56.)  The ALJ found the state agency opinions "mostly

26  persuasive," specifically endorsing their conclusions regarding "limited social

27

28

26

1   demands and infrequent changes in the workplace."[4]  (Dkt. 10-3 at 26.).

2          On this record, the ALJ's conclusions with respect to the supportability and

3   consistency factors are not supported by substantial evidence.  Nevertheless, the

4   ALJ's error in rejecting Dr. Ruddock's opinion concerning Plaintiff's moderate

5   limitation in adapting to workplace changes was harmless.  In crafting Plaintiff's

6   RFC, the ALJ expressly incorporated limitations to "simple, routine tasks" and "no

7   more than occasional changes in the work environment."  (Id. at 25 (bold omitted).)

8   These restrictions adequately reflected the degree of adaptation difficulty identified

9   by Dr. Ruddock.

10         **3.    Dr. Moran's Opinion.**

11         On January 26, 2015, Dr. Moran, a licensed psychologist, performed a

12  psychological evaluation of Plaintiff.  (Dkt. 10-8 at 3-10.)  Dr. Moran observed that

13  Plaintiff's affect was "very slightly constricted," her concentration and attention

14  span were slightly below average, her abstract thinking was in the low average

15  range, she occasionally chose the wrong words to express herself, she had limited

16  judgment and insight, and her full-scale IQ score was 83.  (Id. at 7-9.)  Dr. Moran

17  opined a diagnosis of autism with functioning in the "low average intellectual

18  range."  (Id. at 9.)

19         In assessing work-related limitations, Dr. Moran determined that Plaintiff had

20  the ability to learn simple, repetitive skills; adapt to minimal changes in a work

21  environment; and maintain a regular schedule necessary for work activity.  (Id. at 9.)

22

23  _____

24         [4] Although the state agency consultants opined that Plaintiff could perform
    complex work, the ALJ limited Plaintiff to simple tasks, citing Plaintiff's use of
25  "vocational services and independent living services" and reasoning that the
    restriction would "accommodate [Plaintiff's] difficulties with adapting and
26  managing herself."  (Dkt. 10-4 at 31, 52; Dkt. 10-3 at 27.)  The ALJ did not explain
    the relationship between task complexity and adaptive functioning, or discuss with
27  sufficient specificity how a restriction to simple work mitigates a moderate
    limitation in the ability to adapt to workplace changes.
28

1   Dr. Moran found that Plaintiff "would need assistance initially, and most likely

2   would need a supportive employment setting to assist with her adjustment, getting

3   back and forth to work, and interacting with others in a work setting." (Id.)

4              a.    The ALJ's Rejection of Dr. Moran's Opinion.

5          In rejecting Dr. Moran's opinion as not persuasive, the ALJ found that it was

6   unsupported by, and inconsistent with, the evidence relating to Plaintiff's current

7   SSI claim. (Dkt. 10-3 at 28.)  The ALJ also stated "there [were] notations in the

8   treatment records indicat[ing] that [Plaintiff] ha[d] friends and there [was] no

9   evidence of significant difficulties noted in interacting with others other than some

10  abnormalities noted in the consultative evaluations performed since the recent

11  Supplemental Security Income application date." (Id.)

12             b.    Analysis.

13         Defendant asserts that the ALJ rejected Dr. Moran's January 2015

14  psychological evaluation as "not persuasive" in part because it predated the filing

15  date of Plaintiff's SSI application. (Dkt. 13 at 15-16; Dkt. 10-3 at 28.)  However,

16  medical evidence that predates the SSI application, but postdates the alleged onset

17  date, is still relevant to evaluating the severity and progression of impairments. See

18  Pacheco v. Berryhill, 733 F. App'x 356, 360 (9th Cir. 2018).

19         Nevertheless, the ALJ permissibly rejected Dr. Moran's opinion that Plaintiff

20  "most likely would need a supportive employment setting," because it was framed

21  as a recommendation, not an imperative. See Carmickle v. Comm'r of Soc. Sec.

22  Admin., 533 F.3d 1155, 1165 (9th Cir. 2008).  The portion of Dr. Moran's opinion

23  that Plaintiff would "need assistance initially," however, was not framed as a

24  recommendation and appeared to be consistent with Plaintiff's subjective symptom

25  complaints as well as evidence in the record that reflects Plaintiff received

26  assistance through independent living services and a school coach while enrolled in

27  community college. (Dkt. 10-3; Dkt. 10-8.)

28         Moreover, contrary to the ALJ's assertion that Plaintiff "had friends" and

28

showed no "significant difficulties" in social interaction, (Dkt. 10-3 at 28), the record includes multiple treatment notes documenting challenges in Plaintiff's interpersonal relationships.  For example, during a May 6, 2022, psychotherapy session with Ms. Kamarzarian, Plaintiff reported that her past suicidal ideations had been triggered by a friend's verbal aggression and blame.  (Dkt. 10-9 at 23.)  In that session, Ms. Kamarzarian discussed with Plaintiff how to identify red flags in toxic relationships and how to establish boundaries—further suggesting difficulties with social awareness and interpersonal judgment.  (Id.)  Similarly, a March 24, 2022, note reflected Plaintiff's reports that she felt rejected, engaged in arguments, and experienced outbursts.  (Id. at 39.)  In July 2022, Plaintiff reported that she had a "breakdown" after a falling out with a friend.  (Id. at 8.)

Because this matter is already being remanded, the Court directs the ALJ to reconsider Dr. Moran's opinion regarding the need for initial job-related assistance. However, while the ALJ overstated the absence of social functioning difficulties, that error is harmless because the RFC limits Plaintiff to "occasional interaction with the public and with coworkers," which adequately accounts for moderate social limitations.  (Dkt. 10-3 at 25 (bold omitted).)

**D.**     **The ALJ Did Not Properly Evaluate Plaintiff's Mental Impairments In Formulating The RFC.**

In her fourth ground for relief, Plaintiff contends that the ALJ erred by failing to include Plaintiff's need for supportive services as an accommodation when creating the RFC.  (Dkt. 11 at 13-14.)  Specifically, Plaintiff argues that her need for an accommodation is a work-related limitation that should have been considered by the VE within the RFC.  (Id. at 14.)  Thus, because the VE "testified that such a limitation [as frequent redirection] would not be tolerated and preclude all work[,]" the error was not harmless.  (Id.; Dkt. 14 at 10.)

The ALJ's RFC determined that Plaintiff was "limited to the performance of simple, routine tasks that involve no more than occasional changes in the work

environment" and Plaintiff "can have occasional interaction with the public and with coworkers." (Dkt. 10-3 at 25.) However, the ALJ's RFC does not include any limitation based on Plaintiff's need for support services as an accommodation. (Id.) As set forth above, Plaintiff receives extensive daily support services. (See Dkt. 10-9 at 150 (Plaintiff receives daily support with a maximum of 10 times a day from Tierra del Sol.); Dkt. 10-9 at 174-177, 219 (Quality Care ILS provides Plaintiff with assistance and supportive services for developing household management skills, community awareness skills, and social skills for up to 20 hours per month.); Dkt. 10-9 at 210 ("[Plaintiff] currently receives 20hrs/mo of ILS services through Quality Care ILS and has 30hrs/mo of in-home respite through Accredited Respite."); Dkt. 10-9 at 212 ("[Plaintiff] receives support of 6hrs/d through Tierra Del Sol/ Nexus program.").)

Social Security Ruling 11-2p requires the Agency to consider whether Plaintiff "needs help from other people or special equipment, devices, or medications to perform day-to-day activities." SSR 11-2P, 2011 WL 4055665 at *8 (Sept. 12, 2011). "The more extra help or support of any kind that [Plaintiff] receives because of his or her impairment(s), the less independent he or she is in functioning, and the more severe we will find the limitation to be." Id. Thus, the ALJ was required to consider how Plaintiff's need for extensive daily support services impacted the ALJ's determination regarding Plaintiff's RFC. See, e.g., E.M. v. Kijakazi, 591 F. Supp. 3d 595, 624 (N.D. Cal. 2022) ("The ALJ was required by SSR 11-2p to discuss how E.M.'s participation in these programs – which constituted highly structured or supportive settings – impacted the ALJ's determination regarding his RFC."). As set forth above, the ALJ actually misstated the record with regard to the level of support services received by Plaintiff. Specifically, the ALJ stated that Plaintiff receives services consisting of secondary educational support up to ten days a month, (Dkt. 10-3 at 20), when the record actually shows that Plaintiff receives daily support for up to 10 times per day. (Dkt.

10-9 at 150.)

In light of the VE's testimony that all work would be precluded if the individual required "frequent redirection to tasks" and that employers usually only tolerate individuals being "off tasks up to ten percent each day[,]" the Court cannot conclude that the ALJ's error with regard to Plaintiff's need for support services was harmless.  (Dkt. 10-3 at 52-53); see Stout, 454 F.3d at 1056 (holding that an error is harmless when it is "inconsequential to the ultimate nondisability determination").  Accordingly, remand is necessary so that the ALJ can properly consider how Plaintiff's need for support services impact Plaintiff's RFC.

## VII.
## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision.  The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:  August 21, 2025

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

31